FILED

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

01 SEP 25 AM 10: 57

U.S. DIST. COURT
N.D. OF ALABAMA

|  |  |  |
|---|---|---|
| STACY BOYKIN, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CV- 00-B-0472-S |
| FLANAGAN EXCAVATING CO., INC., | ) ) ) | ENTERED |
| Defendant. | ) ) ) | SEP 2 5 2001 |

## MEMORANDUM OPINION

Currently before the court is Defendant Flanagan's Excavating's ("Flanagan's Excavating" or "defendant") Motion for Summary Judgment. Defendant seeks summary judgment on Plaintiff Stacy Boykin's ("Boykin" or "plaintiff") claims of discrimination in violation of 42 U.S.C. § 1981. Plaintiff claims that because of his race and interracial marriage he suffered pay discrimination and wrongful termination and that he was retaliated against for stating that he planned to file an EEOC charge against defendant.[1] Upon consideration of the record, submissions of the parties, argument of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment is due to be granted.

---

[1] Plaintiff's complaint also alleged disparate treatment claims. On February 26, 2001, plaintiff moved to dismiss the count containing those claims, and on March 6, 2001, the court granted the motion, dimissing the claims.



## I. FACTUAL SUMMARY

Flanagan's Excavating is a company engaged in the business of earth moving and grading for site preparation. Defendant hires four categories of employees, each with varying degrees of skill, training, and experience. These categories include administrative/office staff, truck drivers, heavy equipment operators, and laborers. Mike Flanagan, Jr., owner and president of Flanagan's Excavating, hired Stacy Boykin in October 1998. Flanagan hired Boykin to operate a topsoil machine[2] and to "fill-in" by doing other tasks as needed. Flanagan bases his hiring decisions on his opinion of the ability of the prospective employee and hired Boykin after he demonstrated to Flanagan that he could operate a topsoil machine. The company's policy was to pay employees according to their skill. When setting an employee's wage rate, Flanagan considered what the employee said he could do and what Flanagan saw that he could do. Sometimes specific jobs paid within a certain range. Defendant paid Boykin $10 per hour when he started working with the company in October 1998 and increased his pay to $11 per hour in November 1998. Boykin primarily operated the topsoil machine, but also performed other tasks usually reserved for laborers, such as operating a roller[3] and repairing silt fences[4].

Rain and wet conditions affected the work of Flanagan's Excavating. Some of the machines defendant uses cannot be operated on wet or rainy days; a topsoil machine and a roller are such machines. One of the duties that can be performed on rainy days is repairing silt fences.

---

[2] This machine, also called a "Trommell," is used to sift rocks and roots from soil.

[3] A roller is a piece of equipment with large metal cylinders that is used to compact soil. This piece of equipment has only two gears, forward and reverse, and is distinguished from "heavy equipment," which has numerous controls for the various functions of the machine.

[4] Repairing silt fences involves driving poles, hanging wire, and drilling fabric.

2

On rainy days, employees are often sent home or told not to report to work. Employees with limited skills are the first people sent home during inclement weather. Flanagan attempted to accommodate Boykin's request to work more hours so he allowed Boykin to perform "fill-in" work, such as repairing silt fences, when the weather precluded use of the topsoil machine. Regardless of the job he was performing, Boykin was paid his stated hourly wage.

During his employment with defendant, Boykin worked under two foremen, Ricky Martin ("Martin") and Ernest Ziegler. Martin supervised heavy equipment operators and laborers and reported directly to Flanagan. When Boykin was supervised by Martin, he worked on a crew with operators David Light, James Watkins, Bobby Byars, Charles Shaw, Larry Walker, and Mike Blackmon.

Bobby Byars was hired five months after Boykin to do a "little bit of everything," including operating a bobcat, rubber tire backhoe, roller and repairing silt fence. He had specialized skills in forming concrete and running a level. Byars's salary of $11.50 per hour was increased to $12.00 per hour in June 1999. David Light was hired two months after Boykin. He was a heavy equipment operator who could also run a level. In June 1999 he received an increase from $12.00 to $13.00 per hour. Tom Miller, hired about four days before Boykin was terminated, was an operator with six years of experience. He could operate a number of machines, including a backhoe, motor grader, bobcat, loader, and bulldozer. He could set "blue tops" and worked as a foreman on several projects. He was hired at $13.00 per hour. Bobby Byars, David Light, and Tom Miller, all white employees, were paid more than Boykin when they were hired.

In June 1999, Boykin requested a pay increase. He made the request again three to four weeks later. Sometime during the middle of 1999, Flanagan's Excavating gave pay raises to

3

most of its employees. Flanagan decided not to give Boykin a raise. Although Boykin believes that he did not get a raise because he is black, Flanagan stated that his decision was based on Boykin's poor work performance, specifically his work attitude and tardiness. Flanagan stated that he received complaints about Boykin not following instructions, distracting other workers, and not working well with other employees. Flanagan observed two instances in which Boykin was not working as he was supposed to be. Boykin was late for work a couple of times a month. Although Boykin did not receive another pay increase after November 1998, employees Bobby Byars and David Light received an increase.

      On July 15, 1999, Boykin reported to work. Flanagan went to the job site where Boykin was working. He gave Boykin his paycheck, then left to check other job sites. The workers at Boykin's job site were supposed to be trucking and hauling topsoil. After working for a couple of hours, Boykin felt ill. He told Terry Lake ("Lake"), a mechanic who was "keeping" Boykin's time that day, that he had a headache and was not feeling well. Boykin told Lake and Ken Hudson that he intended to file a charge alleging race discrimination, and he left the job site. When an employee leaves a job site, the appropriate procedure is for the employee to notify Flanagan or another employee with authority that he needs to leave. That day Boykin filed a charge with the EEOC against Flanagan's Excavating alleging that he was being paid a lesser wage than similarly situated white employees because he is black and was in an interracial marriage. Boykin did not return to work on July 15, 1999. Flanagan learned of Boykin's absence because Flanagan discovered that the topsoil was not being delivered and no one could find the trucks. Flanagan investigated and found that Boykin created the problem by leaving the job.

The next day, July 16, 1999, Flanagan sent someone to Boykin's job site with instructions that if Boykin reported on time to do nothing, but if he reported late to send him to see Flanagan. Boykin reported to work approximately thirty minutes after the time Flanagan states that the employees were to be there. Boykin was told he needed to see Flanagan. When Boykin arrived, Flanagan terminated him for leaving work during his shift without notifying a supervisor, returning to work the following day 30 minutes late, and missing work without a doctor's excuse. Flanagan was never told by Terry Lake that Boykin had a headache on July 15, 1999 or that Boykin intended to file an EEOC charge. On July 16, 1999, Boykin amended his EEOC charge, alleging that he was discharged because of his race and his interracial marriage.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure Rule 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the role of the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of

inferences from the facts are left to the jury. *Id.* Therefore, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. The nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. DISCUSSION

Boykin brings this action pursuant to 42 U.S.C. § 1981. He alleges that he was treated less favorably than similarly situated white employees with respect to his pay, that he was wrongfully terminated on the basis of his race, and that he was wrongfully terminated in retaliation for filing a charge with the EEOC. Section 1981 as amended by the Civil Rights Act of 1991 guarantees to all persons in the United States "the same right . . . to make and enforce contracts, . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981. Section 1981 liability must be founded on purposeful discrimination. *Ferrill v. Parker Group*, 168 F.3d 468, 472 (11th Cir. 1999) (citing *General Bldg. Contractors Ass'n v. Penn.*, 458 U.S. 375, 389 (1982)). Although the statutory language and remedies of 42 U.S.C. § 1981 are distinct from Title VII, the allocation of the burdens of proof and the analysis for determining whether a defendant employer unlawfully discriminated against an employee are the same. *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir. 1994). *See also Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

Before the court proceeds with the analysis of Boykin's claims under § 1981, the court must address a preliminary contention by defendant. Defendant submits that an at-will employee such as Boykin has no contractual relationship with his employer and, therefore, cannot maintain a claim under § 1981. The Eleventh Circuit has not squarely addressed the issue, but has noted

that in *Patterson v. McLean Credit Union*, 491 U.S. 164, 185 (1989), "the Court found that Patterson, who appears to be an at-will employee, fell within § 1981's protection." *Bishop v. Avera*, 177 F.3d 1233, 1234, 1236 n.6 (11th Cir. 1999). Other courts have adopted the theory that at-will employees have no contract and, thus, they have no rights under §1981. *Moorer v. Grumman Aerospace Corp.*, 964 F. Supp. 665 (E.D.N.Y. 1997); *Moscowitz v. Brown*, 850 F. Supp. 1185 (S.D.N.Y. 1994). *See also Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1029-31 (7th Cir. 1998). This court disagrees and finds the Fifth Circuit's position compelling: "To hold that at-will employees have no right of action under § 1981 would effectively eviscerate the very protection that Congress expressly intended to install for minority employees, especially those who, by virtue of working for small businesses, are not protected by Title VII." *Fadeyi v. Planned Parenthood Assoc. of Lubbock*, 160 F.3d 1048, 1050 (5th Cir. 1998). *See also Faulk v. Home Oil Co., Inc.*, 184 F.R.D. 645, 652-653 (M.D.Ala. 1999). Defendant's contention that Boykin cannot maintain a claim under § 1981 because he is an at-will employee is without merit.

Boykin can prove his § 1981 claim through the introduction of direct or circumstantial evidence. In this case there is no direct evidence of discrimination. Therefore, the court's analysis is governed by the tripartite framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See Standard*, 161 F.3d at 1330; *Turnes*, 36 F.3d at 1060. Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Burdine*, 450 U.S. at 252-53. If plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802. If

defendant succeeds in carrying this burden, then plaintiff must prove that the defendant's articulated reasons are a mere pretext for unlawful motives, in this case, race discrimination or retaliation. *Burdine*, 450 U.S. at 253. At all times, plaintiff bears the burden of persuasion on the ultimate question of whether the defendant acted with an unlawful motive. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997).

A.   **Discrimination in Compensation and Hours of Employment**

Boykin asserts claims of discrimination in compensation and hours of employment. He claims that defendant gave him a lower starting salary than other white employees hired after him, did not give him a raise because of his race, and allowed white employees to work during inclement weather but sent him home, reducing the number of hours for which he could be paid. The court finds that Boykin has not presented sufficient evidence to establish a prima facie case on his pay discrimination claims because he has not demonstrated that he is similarly situated to his comparators in all relevant respects.

To establish a prima facie case of race discrimination in compensation and hours of employment, plaintiff must prove that (1) he is a member of a protected group; (2) he asked for and was qualified for the employment condition or benefit; (3) despite his qualifications he was denied the condition or benefit; and (4) at the time he was denied the condition or benefit, other similarly situated employees were given the benefit. *Thompson v. Morris Brown College*, 752 F.2d 558, 562 (11th Cir. 1985) (citing *McDonnell Douglas*, 411 U.S. at 802-03). While plaintiff, an African-American, is clearly within a protected class, the court finds that plaintiff has failed to

establish a prima facie case as to any of his three claims. Specifically, plaintiff offers no evidence that he was similarly situated to persons outside the class who were paid a higher salary, given a wage increase, and called upon to work during inclement weather.

To make the comparison that defendant treated similarly situated employees outside his protected class more favorably than himself, Boykin must demonstrate that he and the employees to which he refers are similarly situated in all relevant respects. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citations omitted). If a plaintiff fails to show that he is similarly situated in all relevant respects to the non-minority comparators, summary judgment is appropriate. *Id.* While plaintiff is clearly within a protected class, the court finds that plaintiff has failed to establish a prima facie case. Specifically, plaintiff has not raised a genuine issue of material fact that he was similarly situated to persons outside the class who enjoyed the benefit or condition of employment.

*(1)     Compensation*

Plaintiff worked as a topsoil machine operator and was given "fill-in" jobs when inclement weather precluded use of the topsoil machine and when such jobs were available. Plaintiff alleges that other employees who received the benefits, which he claims he was denied, were similarly situated. However, plaintiff has not presented any evidence, aside from his pleadings,[5] that raises an inference that he received less hours and less pay because of his race.

Boykin states that he can run an excavator, bulldozer, front end loader, topsoil machine, roller, and rubber tire backhoe. Boykin asserts, through his own testimony, that he was as qualified as the other employees whom he says were afforded the benefits that he was denied.

---

[5] Plaintiff may not "rest on [his] pleadings" to survive summary judgment. Fed. R. Civ. P. 56(c).

Plaintiff's comparators were hired for and performed other functions that required different and higher-level skills. To establish a prima facie case of racial discrimination based on different salaries, plaintiff must demonstrate that he was paid less than non-minority employees for work requiring substantially the same responsibility. *Pittman v. Hattiesburg Municpal*, 644 F.2d 1071, 1074 (5th Cir. 1981).[6]

It is undisputed that Boykin was paid a lower hourly wage than Bobby Byars, David Light, and Tom Miller. However, the employees identified by Boykin as similarly situated were not hired for the same job and did not perform the same tasks as Boykin. Flanagan's Excavating paid its employees according to skill level and experience. Tom Miller was an operator with six years experience. He could operate a backhoe, motor grader, bobcat, loader, and a bulldozer, set "blue tops," and function as a foreman. David Light was a heavy equipment operator who could also run a level. Bobby Byars was a heavy equipment operator with specialized skills in forming concrete and operating a level. Boykin was hired to run a topsoil machine. By his own admission, he was only qualified to run a bulldozer and trackhoe in addition to the roller and topsoil machines. Because Boykin has not presented substantial evidence to create a genuine issue of material fact that he was similarly situated to the employees who received higher compensation he fails to establish his prima facie case.

Even if Boykin were similarly situated to employees he claims received more favorable treatment, he has not rebutted defendant's proffered reason for giving him a lower wage. Flanagan's Excavating produced a legitimate, non-discriminatory reason for giving him a lower

---

[6] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

wage. The company paid its employees based on their skill and experience. Experience is a legitimate, non-discriminatory basis for a disparity in pay. *Daniel v. Church's Chicken*, 942 F. Supp. 533, 540 (S.D. Ala. 1996). As the court previously discussed, the employees to which Boykin compares himself have skills and experience that Boykin doesn't even claim to have. Boykin has not demonstrated with sufficient evidence to create a genuine issue of material fact that defendant's legitimate, non-discriminatory reason for not paying Boykin a higher wage is pretext for discrimination. Summary judgment should be granted on the claim.

*(2)  Increase in Compensation*

Boykin claims that he was not given a pay increase in June 1999 although he requested an increase and other employees were given one. However, Boykin's prima facie case fails because he has not demonstrated that he was similarly situated to his comparators.

In determining whether employees are similarly situated for the purpose of establishing a prima facie case, the court may consider whether employees are accused of the same or similar conduct and then are treated differently. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Boykin has offered no evidence that other employees identified by him as similarly situated had complaints made about their job performance as Boykin did. Foremen complained to Flanagan that Boykin did not follow instructions, distracted other workers, and did not get along well with other employees. Flanagan observed Boykin not working as instructed on two occasions. Boykin admits that he was tardy for work "a couple of times a month." Boykin has not offered any evidence to suggest that Flanagan received complaints about the employees to which he compares himself or that defendant gave them an increase despite complaints or other poor work performance. Because Boykin has offered no evidence he was similarly situated to the employees who received a pay increase, his prima facie case fails.

Even if the court found that Boykin was similarly situated to the employees who received an increase, Boykin's claim still fails. Flanagan considered Boykin's request for a raise. He inquired about Boykin's performance after Flanagan, himself, observed Boykin not doing his work. Defendant refused to give Boykin a raise because of his poor work performance and attitude. Poor work performance is a legitimate, non-discriminatory reason for treating Boykin differently than the other employees. *See Daniel*, 942 F. Supp. at 539. Boykin has offered no evidence to support a finding that defendant's proffered reason for not giving Boykin an increase in pay is pretext for discrimination. Defendant is entitled to summary judgment on the claim.

*(3)    Hours of Employment*

Boykin alleged that he was not allowed to work during inclement weather and white employees were. According to Boykin, this resulted in discrimination against him because white employees were able to work hours for which they could be paid.

Plaintiff did not file any evidence in opposition to defendant's Motion for Summary Judgment on the discrimination in hours of employment (pay discrimination) claim alleged in Count I of Complaint. Plaintiff notes in his brief that he is only pursuing claims that are articulated and addressed in his brief. The Federal Rules of Civil Procedure provide in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Furthermore, "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d

587, 599 (11th Cir. 1995).

Plaintiff did not file any evidence in opposition to defendant's Motion for Summary Judgment on the discrimination in hours of employment claim. Based on the evidence filed by the defendant and the argument in its brief, the court concludes that defendant is entitled to judgment as a matter of law on this pay discrimination claim.

**B.     Wrongful Termination**

Boykin also alleges that his termination on July 16, 1999, was motivated by discrimination based on his race. However, Boykin has not established a prima facie case of wrongful termination based on discrimination.

To prove that he was wrongfully terminated on the basis of his race, Boykin must prove that (1) he was a member of a protected class; (2) he was qualified for the position; (3) he was discharged; and (4) that his former position was filled by an individual outside his protected class or that similarly situated individuals outside his protected class were retained. *Wright v. Southland Corp.*, 187 F.3d 1287, 1291 (11th Cir. 1999); *Lincoln v. Board of Regents of the Univ. Sys. of Ga.*, 697 F.2d 928, 937 (11th Cir. 1983); *Jones v. Lumberjack Meats, Inc.*, 680 F.2d 98, 101 (11th Cir. 1982). If Boykin establishes a prima facie case, an inference of discrimination arises, and the burden shifts to defendant to produce a legitimate, non-discriminatory reason for plaintiff's termination. *Wright*, 187 F.3d at 1291. To survive summary judgment, plaintiff must then present sufficient evidence such that a reasonable trier of fact could reasonably find that defendant's proffered reason is a pretext for discrimination. *Id.*

Boykin is an African-American. Flanagan's Excavating hired him to operate the topsoil machine and to act as a "fill-in" as needed. It is undisputed that Boykin is qualified to perform the work for which he was hired. It is also undisputed that he was discharged. However Boykin

has presented the court with no evidence on which to base a finding that his position was filled by a similarly situated individual outside of plaintiff's protected class. Furthermore Boykin has not offered evidence that a similarly situated individual outside his protected class was retained. He offers the conclusory statement that none of the employees supervised by Martin are African-American without offering any evidence that those individuals were similarly situated to him in all relevant respects and were retained when he was not. Because Boykin has failed to present evidence to support the elements of his claim, it fails.

Even if the court assumes, *arguendo*, that Boykin has established a prima facie case of discriminatory discharge, plaintiff has not demonstrated with sufficient evidence to create a genuine issue of material fact that defendant's reason for discharging him is pretext for discrimination. Flanagan testified that Boykin was discharged because of his poor work performance and attitude. Boykin, by his own admission, was late for work on numerous occasions. Boykin's supervisors complained about his work performance. Flanagan observed Boykin not doing his work on more than one occasion. On July 15, 1999, Boykin left the job site early without notifying his supervisor or Flanagan. It was not until Boykin was tardy again on July 16, 1999, that Flanagan fired him.

Boykin submits that on July 15, 1999, he told Terry Lake, another employee who was "keeping up" with Boykin's time that particular day, that he was leaving because he did not feel well. Flanagan learned that Boykin had left when he visited a job site after he received a complaint about the production. He found that Boykin was gone, and Terry Lake, who was untrained to do so, was operating the topsoil machine. "The law is clear that, even if a [§ 1981] claimant did not in fact commit the violation with which he is charged, an employer successfully rebuts any prima facie case of [discrimination] by showing that it honestly believed the employee

14

committed the violation." *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989). Even if the court found that Boykin did notify the proper person that he was leaving, plaintiff has not demonstrated that defendant's proffered reason is pretextual. An employer may terminate an employee for "a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 2000). In any event, on July 16, 1999, Boykin reported late for work and had a history with Flanagan of poor work performance. The proffered reason for Boykin's discharge clearly meets the test of being one that might motivate a reasonable employer. Boykin has offered no evidence on which a reasonable jury could find that defendant's proffered reason for terminating him was pretext for discrimination, and summary judgment is due to be granted.

C.      **Retaliatory Discharge**

Boykin contends that defendant fired him in retaliation for filing discrimination charges against the company. Boykin failed to establish a prima facie case of retaliatory discharge because he has not established the requisite causal link between the filing of the EEOC charge, or his threats to do so, and his termination.

To prove that he was discharged in retaliation for filing discrimination charges with the EEOC, a plaintiff must show: (1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action. *Berman v. Orkin Exterminating Co.*, 160 F.3d 697, 701 (11th Cir. 1998); *Jones*, 680 F.2d at 101. A plaintiff satisfies the third element of the prima facie case "if the evidence shows that the protected activity and the adverse action are not totally unrelated." *Berman*, 160 F.3d at 701. If Boykin establishes a prima facie case, an inference of discrimination arises, and the burden shifts

to defendant to produce a legitimate, non-discriminatory reason for plaintiff's termination. *Wright*, 187 F.3d at 1291. To survive summary judgment, plaintiff must then present sufficient evidence such that a reasonable trier of fact could reasonably find that defendant's proffered reason is a pretext for discrimination. *Id.*

Filing an EEOC charge is statutorily protected activity. *Berman*, 160 F.3d at 701. It is not disputed that defendant took adverse action against Boykin when Flanagan fired him. However, Boykin's prima facie case fails on the third element of the claim.

Boykin told Terry Lake and Ken Hobson of his plans to file a charge. Martin stated that Ralph Parker told him that Boykin planned to file a charge. However, there is no evidence that Mike Flanagan, the undisputed decision-maker, knew that Boykin had filed a charge or even that he intended to when he decided to terminate the plaintiff. Martin stated that he never told Flanagan. And Boykin admits that he doesn't know if anyone who knew of his intent to file charges told Flanagan of his plans. Flanagan asserts that he was not aware of any charges by Boykin until after he terminated him.

Plaintiff looks to the temporal proximity of the date he filed the EEOC charge and the date he was terminated to prove his prima facie case. However, the fact that Boykin happened to file an EEOC charge on July 15, 1999, and was terminated on July 16, 1999 does not alone save his claim. Although plaintiff contends that an employee can satisfy the causal connection element of the prima facie case by establishing a close temporal proximity between the protected activity and the adverse action, that assertion is contrary to the law of the Eleventh Circuit. The Eleventh Circuit has "plainly held that a plaintiff satisfies [the third] element if he provides sufficient evidence that the decision-maker became aware of the protected conduct and that there was close temporal proximity between this awareness and the adverse employment action."

16

*Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999). This two-pronged analysis required Boykin to show that Flanagan knew Boykin filed the claim and that there is close temporal proximity between his awareness and Boykin's termination. Absent a showing that Flanagan knew Boykin engaged in the statutorily protected activity before he terminated him, Boykin cannot prove the requisite causal connection between the adverse action and the protected activity.

Even if Boykin had established the requisite causal link, he still cannot defeat summary judgment. The court previously considered whether Flanagan produced a legitimate, non-discriminatory reason for firing plaintiff and whether plaintiff presented sufficient evidence such that a reasonable trier of fact could find that reason to be pretextual. The court found that he did not. Flanagan fired Boykin because Boykin left work without notifying a supervisor, left another employee alone on a job site to do the work for which Boykin was hired and the other employee was not qualified, and was about thirty minutes late to work the following day. Boykin has produced no evidence that the reason proffered by defendant is pretext. Summary judgment on the retaliatory discharge claim is due to be granted.

## IV. CONCLUSION

After a careful review of all the evidence, the court concludes that no genuine issues of material fact exist herein, and defendant is entitled to judgment as a matter of law on all claims asserted by the plaintiff. An Order granting defendant's Motion for Summary Judgment will be entered contemporaneously with this Opinion.

**DONE** this 25th day of September, 2001.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge